**Before the United States Court of Appeals for the Sixth Circuit**

| | |
|---|---|
| **United States of America** )<br>          )<br>     Plaintiff-Appellee    )<br>          )<br>-vs-         )<br>          )<br>**Benjamin Ross**      )<br>          )<br>     Defendant-Appellant   )<br>          )<br>          ) | Case No. 1:19-cr-00351-JRA<br><br>Judge Adams<br><br>Renewed 2255 Petition |

In an unexpected twist, the case against Benjamin Ross hinges on the revelation that the key evidence—a K9's detection—may be fundamentally flawed, as the dog in question lacked training to detect fentanyl. This memorandum aims to dissect and challenge the conviction's underpinnings in light of this new evidence, *to wit*:

**Statement of the Case and Facts**

**I.     Introduction: This motion comes based on newly discovered evidence, i.e. that the police dog at issue had no fentanyl detection training.**

In this renewed Motion to Vacate under 28 U.S.C. § 2255, we present newly discovered evidence critical to the defense of Benjamin Ross, which significantly undermines the reliability of the primary evidence used in his conviction. This new evidence, obtained through a diligent pursuit of public records, reveals a pivotal and previously undisclosed fact: the Ohio State Highway Patrol's K9 Officer Rexy, instrumental in Ross's arrest, had not received training in detecting fentanyl—the very substance for which Ross was indicted. This revelation, received from the Ohio State

Highway Patrol's Central Records Unit via a Freedom of Information Act (FOIA) request, constitutes a substantial basis to challenge the initial search's legality and the subsequent conviction. It casts serious doubt on the credibility of the evidence used against Ross and forms the cornerstone of our argument for the necessity of vacating his conviction.

### II. Facts of Record

On June 4, 2019, the United States District Court, Northern District of Ohio, Eastern Division's Grand Jury indicted Benjamin Ross, charging him with Attempting to Possess Fentanyl with Intent to Distribute, under 21 U.S.C. Sections 841(a)(1), (b)(1)(B), and 846. [R.E. 10, PageID# 47-48.] The Court asserted jurisdiction over this case pursuant to 18 U.S.C. Section 3231. Ross entered a guilty plea to the charges, leading to the Court sentencing him to 120 months in prison. [R.E. 48, PageID# 433 – 461.] The Court's Clerk recorded this judgment on February 10, 2020. [R.E. 39, PageID# 250 – 256.] Ross initiated an appeal to the Sixth Circuit Court of Appeals the following day. [R.E. 41, PageID# 271.]

Before the indictment, on May 16, 2019, DEA Special Agent Paul Stroney Jr. submitted a Criminal Complaint to the Court. [R.E. 1; R.E. 1-1.] He accused Ross of violating 21 U.S.C. Section 841(a)(1) and (b)(1)(C), pertaining to the Possession with Intent to Distribute Controlled Substances. Stroney's Affidavit attached to the complaint

stated the following:

On May 15, 2019, OSP Sergeant Dunbar stopped Ross, who drove a BMW sedan with excessive window tint, on Southern Boulevard in Youngstown, noting "criminal indicators".

- Dunbar, assisted by OSP Trooper Baker, conducted a consensual pat-down of Ross, subsequently placing him in his cruiser.

- Baker used his certified narcotics detection canine to sniff Ross's car, which indicated the presence of controlled substances at the driver's side.

- A search of the car led to the discovery of 4.25 ounces of light blue pills, suspected of containing Fentanyl, based on their markings, color, and packaging.

- Two cell phones in Ross's possession suggested to the OSP his involvement in drug trafficking. [R.E. 1, PageID# 1 – 8.]

- A review of the video, in possession of both parties, would lead someone to question what the alerting behavior of Rexy actually was.

The authorities detained Ross at the scene. On May 17, 2019, the Court assigned a Federal Public Defender to Ross, holding an initial appearance and later, on May 22, 2019, a Preliminary Hearing and a detention hearing. [R.E. 4.] The Court found sufficient probable cause for the charge and ordered the Grand Jury to consider the case, detaining Ross under the U.S. Marshall's custody. [R.E. 6,; R. 16, PageID# 71-116.] Subsequently, on May 23, 2019, the Court issued an Order Of Detention. [R.E. 7, Page

3

ID # 42 – 43]. The Grand Jury, on June 4, 2019, indicted Ross for Knowingly and Intentionally Attempting to Possess with Intent to Distribute approximately 117.70 grams of Fentanyl. [R.E. 10, PageID# 47 – 51.] Ross pleaded not guilty at his arraignment on June 6, 2019. [R.E. 14 Page ID# 56 – 67.]

Ross filed a Motion to Suppress on August 30, 2019, claiming constitutional violations during his vehicle stop and requesting suppression of all resultant evidence. [R.E.24, PageID# 136 – 139.] The Government responded on September 26, 2019, asserting the stop's legality based on Ross's traffic infractions. [R.E. 26, PageID# 141 – 155; R.E. 26-1, PageID# 156, R.E. 26-2, PageID# 157 – 164; R.E. 26-3, Page ID# 165; R.E. 26-4, PageID# 166.] After a hearing on September 23, 2019, [R.E. 46, Page ID# 277 – 403], the Court denied Ross's Motion to Suppress, finding the officers had reasonable suspicion for the stop due to the car's excessive window tint and Ross's failure to use a turn signal. [R.E 30, PageID# 175 – 179.] Ross, in a Plea Agreement dated October 15, 2019, agreed to plead guilty while reserving his right to appeal any sentence exceeding the maximum advised by the Sentencing Guidelines, and the Court's denial of his motion to suppress. [R.E. 31, Page ID ## 180-189.] He changed his plea to guilty on the same day. [R.E. 47, Page ID ## 406-432.]

Ross's sentencing occurred on February 4, 2020. [R.E. 48, PageID# 433 – 461.] The Court sentenced him to an additional 24 months, consecutive to the 120 months for his supervised release violation, for possessing a firearm as a felon, under 18 U.S.C.

Section 922(g)(1) and 924(a)(2). [R.E. 48, Page ID # 458.] Ross appealed the final judgment on February 10, 2020. [R.E. 41, Page ID# 271.] The Sixth Circuit Court upheld his conviction and sentence. [R.E. 51.] Ross then sought the U.S. Supreme Court's review on the search-and-seizure issue. [R.E. 55.] However, the Supreme Court denied certiorari.

### III. Investigation, FOIA Inquiry, and Newly Discovered Evidence

In a sequence of legal maneuvers marked by persistence and inquiry, Ross, by way of the undersigned, embarked on a detailed investigation into the training of K9 Officer Rexy. This investigation began with a public records request sent on September 19, 2022, to ADCentralRecords@dps.ohio.gov. Cartwright-Jones sought comprehensive records regarding Rexy's training, particularly focusing on the dog's involvement in the May 17, 2019 traffic stop resulting in Ross's arrest. The Ohio State Highway Patrol acknowledged the request, citing a significant backlog and assuring a processing order based on the receipt of the request.

Furthering the pursuit of detailed evidence, on November 14, 2023, the defense followed up with an additional inquiry, this time specifically requesting documents related to the training of canines in detecting fentanyl and its analogues. This refined request aimed to scrutinize the basis of Rexy's involvement in the aforementioned traffic stop. In response, the OSP Central Records clarified that their training program did not

5

include the odor of fentanyl, thus indicating the absence of any responsive records pertaining to this particular inquiry.

Meanwhile, in the Courts, a parallel narrative unfolded. Ross had filed a notice of appearance for Ross on September 18, 2022, for the purpose of filing a 2255 petition. This strategic move, executed on October 4, 2022, aimed to vacate Ross's sentence under 28 U.S.C. 2255. However, this effort met scrutiny on December 2, 2022, when the Court denied the motion and denied a certificate of appealability. The ruling emphasized Ross's failure to demonstrate any deficient performance by his counsel, closing this chapter of the legal battle—but not the whole book.

Undeterred, Ross, through his counsel, escalated the matter to the Sixth Circuit Court of Appeals. On December 19, 2022, Ross filed a Notice of Appeal, challenging the court's decision. This step represented a continued effort to overturn the initial ruling. However, the legal tides remained unfavorable as the Sixth Circuit, on July 25, 2023, denied the application for a certificate of appealability. This decision marked a significant setback in Ross's quest for legal redress.

The final turn in this legal saga arrived with Ross's petition to the highest court in the land. On October 23, 2023, the petition for a writ of certiorari was filed with the U.S. Supreme Court and assigned docket number 23-5873. This move symbolized a last-ditch effort to seek a judicial review of the lower court's decisions. However, on December 12, 2023, the Supreme Court denied the petition, effectively bringing an end to Ross's

appellate journey.

This conclusion, while not in Ross's favor, underscored the exhaustive legal avenues explored and the persistent efforts of the defense in seeking justice for Ross. And when all hope looked lost, in a moment of *l'esprit de l'escalier*, counsel sent a subsequent inquiry to the State: a request for specific training of Rexy as to the ability to detect fentanyl. The government's response was the following: "The canine training unithas no responsive records as we do not train canines on the odor of fentanyl." [Appx. at 001.] This evidence—being (a) newly discovered, (b) wholly remarkable, and (c) taking a big bite out of the stability of any claim that Rexy could establish probable cause to search for drugs, fentanyl particularly—invites reopening of Ross's 2255 proceedings.

## Law and Discussion

### IV. General Standard of Review: Subsequent Petitions Require a Production of Newly Discovered Evidence

Renewed 2255 petitions require a showing of newly discovered evidence, and Ross's case presents such. *Gordon v. Rardin* is the Sixth Circuit's most recent case taking up the issue, and application to Ross's case benefits from reverse analogy. In crafting an inverse analogy between the present case involving Benjamin Ross and the case of Ronald Donald Gordon as detailed in *Gordon v. Rardin*, 2023 U.S. Dist. LEXIS 188206, a stark contrast emerges, particularly regarding the introduction of newly

7

discovered evidence. In Gordon's case, the Court dismissed his petition for a writ of habeas corpus under 28 U.S.C. § 2241, primarily because Gordon failed to present any newly discovered evidence or demonstrate a change in law that would render Section 2255 inadequate or ineffective. Gordon simply rehashed the same arguments he previously raised in his original Section 2255 motion, leading to a swift dismissal.

Contrastingly, in Ross's scenario, the foundation of the renewed 2255 motion rests upon a significant revelation unearthed through a FOIA request: the Ohio State Highway Patrol's K9 Officer Rexy, crucial in Ross's arrest, was never trained in detecting fentanyl. This newfound evidence not only questions the legality of the initial search but also casts a shadow over the entire conviction process. Unlike Gordon, who recycled old arguments, Ross brings a fresh perspective to the table, one that the Court has not yet considered.

The difference in the two cases becomes even more pronounced when examining the legal requirements for a successful habeas corpus petition under Section 2241. Gordon's petition foundered as it lacked any element of novelty or unforeseen legal developments. In Ross's case, however, the newly discovered information about K9 Officer Rexy's training—or lack thereof—presents a unique argument that was not and could not have been raised in the original proceedings. This key distinction sets Ross's case apart from Gordon's, potentially qualifying it under the 'newly discovered evidence' clause in Section 2255(h)(1).

Furthermore, the essence of habeas corpus petitions lies in challenging convictions based on substantive claims that, if proven true, would demonstrate the unlawfulness of the detention. Gordon's failure to introduce any new evidence or legal theory meant his petition did not fulfill this fundamental criterion. On the other hand, Ross's revelation about Rexy's training directly challenges the evidence used to convict him, suggesting a plausible route to demonstrating the unlawfulness of his detention.

In conclusion, while Gordon's case exemplifies a failed attempt to circumvent the procedural barriers to successive habeas petitions, Ross's approach embodies a strategic use of newly uncovered evidence to rejuvenate his legal challenge. This stark difference in the nature of the evidence presented in each case highlights the nuanced complexities of federal post-conviction relief and underscores the importance of newly discovered evidence in revitalizing legal arguments in post-conviction proceedings.

## V. Ineffective Assistance

### A. Standard for Ineffective Assistance

Both issues in this cause pertain to ineffective assistance. According to the Courts, "[t]o establish that he was denied the right to the effective assistance of counsel, [a] [p]etitioner must establish that his counsel's performance was so deficient that he was not functioning as the counsel guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), internal quotations omitted, quoted in *Moreno v. Davis*, W.D.Mich. No. 1:07-CV-1184, 2010

9

U.S. Dist. LEXIS 52386, at *17-18 (Apr. 26, 2010). Hence, a 2255 movant "...must demonstrate that his attorney's actions were unreasonable under prevailing professional norms." Id., citing Strickland at 688. Granted, though, "[i]n assessing such a claim...the Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id., internal quotations omitted, citing Strickland supra at 689. Further, a movant must "...establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., citing *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

Turning to the specific issue of failure to investigate, according to the Courts, "[c]ounsel owes his client a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *United States v. Money*, E.D.Ky. No. 6:16-CR-00056-GFVT-EBA, 2021 U.S. Dist. LEXIS 54634, at *6-7 (Jan. 14, 2021), citing Strickland, 466 U.S. at 691. So, "[i]n order to prove the prejudicial prong of Strickland, [one] must allege with specificity what the investigation would have revealed and how it would have altered the outcome." Id., citing United States v. Hassan, 2014 U.S. Dist. LEXIS 150258, 2014 WL 5361942, at *5 (E.D. Mich.

10

Oct. 21, 2014), quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). According to the Courts, "...speculation that an alternative strategy would have altered the judicial outcome is not sufficient." Id., citing *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009).

    **B.**    **Counsel was ineffective for declining to inquire into the qualifications of the K9 Officer.**

The discussion of Rexy's ability as an alert K9 was as follows:

- "He is a dual purpose dog. So he trains—he's trained in narcotics, area search, building search, evidence search, and tracking as well, and the apprehension work." [Sup.Tr., R.E. 129, PageID# 352 – 53.]

- Government's counsel inquired, "And is Rexy certified right now, and has he been continuously through the time that you've been working with him?" [Id.]

- To which the officer responded, "Yes." [Id.]

- Couple the above with the fact that Ohio does not train police dogs to sniff fentanyl, and one sees the prejudice. The fact that Rexy is not trained on fentanyl has a probability of—in terms of Strickland—yielding a different result in the suppression proceedings.

No documentation or discussion of Rexy's abilities, training, history, or pedigree came into evidence. This is apparent from a review of the discovery file, which is an

11

exhibit that counsel has in his custody, and which is likewise available to the Justice Department, Respondent.  At any rate, reviewing the transcript, based on that colloquy, one can say that there was insufficient foundation to make Rexy's alert admissible. Though the Sixth Circuit does not appear to have taken up the issue, there is some minimal scientific foundation, at least, that the government must proffer to make a K-9 alert admissible.  The Honorable Magistrate Judge, John H. Rich III of the United States District Court for the District of Maine offered the following:

> My research indicates that courts generally have rejected the proposition that a *Daubert*-type scrutiny is appropriate in these circumstances and/or have held that evidence of a drug detection dog's training and certification establishes its reliability.
>
> Although the First Circuit has not addressed the question of the applicability of *Daubert* in this context, it, too, has indicated that evidence of a K-9's training and certification generally suffices to establish its reliability as a drug sniffing dog.

*United States v. Almeida*, D.Me. No. 2:11-cr-127-DBH, 2012 U.S. Dist. LEXIS 2415, at *31-34 (Jan. 9, 2012), internal citations and quotatiosn omitted, contrasting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  So a *Daubert* hearing and presumably a full-scale Evid.R. 702 foundation is not necessary, but something to show that the dog is trained and certified is.  Notably, here, the only evidence of Rexy's reliability is the officer's response "yes" to an incredibly leading question, "And is Rexy certified right now, and has he been continuously through the time that you've been working with him?" [Supra.]

Looking to the standard above, the defense suggests that there is sufficient evidence under the *Bracy* standard, infra, to merit discovery. That is, "..specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is. . . entitled to relief[.]" The specific discovery, here, is simply documentation of Rexy's training and certification, particularly to detect Fentanyl. As the accompanying exhibit [Exh. 1] indicates, counsel has requested these by way of the Freedom of Information Act. And the results having come back suggesting some inability to detect fantanyl, relief under 2255 is appropriate.

### C. Standard for Granting a Discovery Period

In the event that the submission accompanying this brief does not conclusively resolve the issue of Rexy's ability to provide probable cause for a search, this petition proposes as one of its reliefs a request for a discovery period and/or subpoena power. Rule 6 of the Rules Governing Section 2254 and 2255 Cases allows that, in any habeas proceeding under these rules, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing Section 2254 and 2255 Cases; see also Rule 1(b), stating "[t]he district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a) [Cases Involving a Petition under 28 U.S.C. § 2254]." *McKinney v. United States*, E.D.Mich., 2019 U.S. Dist. LEXIS 174065, at *13 (Oct. 8,

2019), clarifies that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997). However, a court, at its discretion, may permit discovery if the petitioner establishes "good cause," demonstrating the necessity of such a request. See Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254, noting "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." (Emphasis supplied). Similarly, "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is... entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 908-09, citing *Harris v. Nelson*, 394 U.S. 286, 299, 89 S. Ct. 1082, 22 L. Ed. 2D 281 (1969). (It is noteworthy that the above-referenced document appears to outline standards for both 2254 and 2255 cases, though courts often refer to it by the applicable statute only.)

## Conclusion and Prayer for Relief

The petitioner asks for the following relief:

- For this Court to allow a discovery period and subpoena power to recover any further discovery relative to Rexy's detection ability.

- To hold an evidentiary hearing on this cause following such discovery period;

14

- Following same to order the conviction and sentence in this cause vacated; and/or

- To order any such relief this Court deems just, legal, and proper.

                Respectfully Submitted.

                *s/ Rhys B. Cartwright-Jones*
                **Rhys B. Cartwright-Jones , 0078597**
                42 N. Phelps St.
                Youngstown, OH 44503-1810
                330-744-6454, tel.
                216-272-1938, cell.
                866-223-3897, fax
                rhys@cartwright-jones.com

**Proof of Service:**  All parties to this cause are notice by way of the docket, and receive service by this Court's ECF application.

                *s/ Rhys B. Cartwright-Jones*
                **Rhys B. Cartwright-Jones , 0078597**

## Fwd: [Records Center] Public Records Request :: R010712-111423

From: Rhys Cartwright-Jones (rhys44503@gmail.com)

To: j_slaven@cartwright-jones.com

Date: Tuesday, December 5, 2023 at 07:47 AM EST

To Ross, Benjamin w/ cover.

---------- Forwarded message ---------
From: **PUBLICSAFETYOHIO Public Records Center** <publicsafetyohio@govqa.us>
Date: Mon, Dec 4, 2023 at 1:51 PM
Subject: [Records Center] Public Records Request :: R010712-111423
To: rhys44503@gmail.com <rhys44503@gmail.com>



--- Please respond above this line ---

# Ohio | Department of Public Safety

### RE: PUBLIC RECORDS REQUEST # R010712-111423

Dear Attorney Rhys Cartwright-Jones -

The canine training unit has no responsive records as we do not train canines on the odor of fentanyl.

If you have any questions or need additional information, please message the OSP Central Records staff on the specific records request using My Records Center.

Thank you!

OSP Central Records

---

To monitor the progress or update this request please log into the Public Records Center

Powered by
**GovQA**

--
Sincerely,
s/ Rhys B. Cartwright-Jones